UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER WESTGATE BARRETT,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-CV-0044-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney Dana Chris Madsen represents Christopher Westgate Barrett (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on January 3, 2013, alleging disability since July 1, 2000, due to depression, deformed patellar tendon in right knee, slipped discs in back, pericarditis, personality

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

disorder, dyslexia, ADD, and short term memory loss. Tr. 194, 198. Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Jesse K. Shumway held a hearing on July 29, 2015, Tr. 31-73, and issued an unfavorable decision on September 3, 2015, Tr. 11-21. The Appeals Council denied review on December 1, 2016. Tr. 1-6. The ALJ's September 2015 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on January 30, 2017. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on August 27, 1986, and was 14 years old on the alleged onset date, July 1, 2000, and 26 years old on the date the application for SSI was filed, January 3, 2013. Tr. 57, 194-196. He obtained a GED in 2007 and also completed specialized job training in truck driving in 2008. Tr. 199. Plaintiff testified at the administrative hearing that he last worked in 2011. Tr. 59. His disability report indicates he stopped working in December 2011 because of his condition(s). Tr. 199.

Plaintiff stated he received mental health treatment from Frontier Behavioral Health about six months prior to the July 2015 administrative hearing but discontinued those services after only about a month because he was no longer experiencing symptoms of depression. Tr. 47. He testified his psychological symptoms had gone away. Tr. 64-65.

With respect to physical issues, Plaintiff indicated he has daily chest pain, but his doctors had been unable to determine a cause for the issue. Tr. 59-60. He stated that if he stays seated or lies down, the chest pain will typically dissipate.

Tr. 60. He reported he therefore stays in bed most of the day. Tr. 60. Plaintiff testified he also has dull pain in his right knee and that it would give out on him about five times a week. Tr. 61. He indicated he had been prescribed a cane for the ailment, but he no longer used the cane. Tr. 60-61. Plaintiff stated he has stomach issues, but all tests on his colon and abdomen had been negative. Tr. 61. He testified that approximately 15 days a month he has diarrhea which requires him to use the bathroom 20 times a day. Tr. 62. Plaintiff lastly indicated he has sharp lower back pain due to four slipped discs. Tr. 65-66.

Plaintiff testified he could walk about two miles in one stretch, stand about half-an-hour at one time, and sit about two hours before needing to stand up and move around. Tr. 62-63. Plaintiff stated that his daily activities consisted of mostly lying in bed. Tr. 64. When asked why he lies in bed most of the day, he responded, "because I have nothing else to do really." Tr. 66.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the

administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On September 3, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the January 3, 2013, application date. Tr. 13.

At step two, the ALJ determined Plaintiff had the following severe impairments: somatoform disorder, personality disorder and depression. Tr. 13.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 14.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined he could perform a range of medium exertion level work with the following additional limitations: he can only frequently climb stairs and ramps, stoop, kneel, crouch, crawl and climb ropes, ladders, or scaffolds; he must avoid concentrated exposure to pulmonary irritants and hazards; he can perform only simple, routine, repetitive tasks with a reasoning level of two or less; he is capable of only simple decision-making in a routine, predictable environment; and he can have no contact with the public and only superficial contact with supervisors and coworkers. Tr. 14-15.

At step four, the ALJ found Plaintiff was unable to perform any of his past relevant work. Tr. 19. However, at step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of kitchen helper, industrial cleaner and laborer stores or warehouse worker. Tr. 19-20. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 3, 2013, the SSI application date, through the date of the ALJ's decision, September 3, 2015. Tr. 20-21.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) improperly discrediting Plaintiff's symptom claims; and (2) failing to properly consider and weigh the medical opinion evidence of record.

**DISCUSSION**

**A.     Plaintiff's Symptom Testimony**

Plaintiff first contends the ALJ erred by improperly discrediting his symptom claims.  ECF No. 14 at 11-15.

It is the province of the ALJ to make credibility determinations.  *Andrews*, 53 F.3d at 1039.  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.  Tr. 16.

**1.     Objective Medical Evidence**

The ALJ indicated the objective medical evidence of record did not substantiate Plaintiff's claimed level of impairment.  Tr. 16.

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor.  *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991); *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (in determining credibility, the ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

///

The ALJ noted that although Plaintiff alleged a complete inability to work, his activities and the medical reports overall do not support significant limitations. Tr. 16. The ALJ stated "[t]here is a wide gulf between the claimant's allegations and the medical evidence," Tr. 16, and noted Plaintiff has a history of numerous visits to the ER for a variety of physical complaints, but no serious problems have ever been detected, Tr. 15. The ALJ's statements are supported by the record which reflects unremarkable medical findings. *See e.g.* Tr. 680 (April 2015 medical record stating Plaintiff just had a major work up for heart disease and it was negative); Tr. 683 (April 2015 medical record indicating Plaintiff reported he has had EKG, X-Ray, U.S., and endoscopy with nothing significant found); Tr. 698 & 700 (February 2014 and September 2013 reports indicating Plaintiff presented with more complaints than findings); and Tr. 417 & 431 (March 2013 and July 2012 reports of normal medical examinations following ER visit). Tr. 15. Moreover, Plaintiff testified that his psychological symptoms had dissipated, Tr. 64-65, and, with respect to his physical complaints, his doctors "have no idea why [he was] having chest pain," Tr. 59.

As indicated by the ALJ, the objective medical evidence of record does not support the disabling symptoms and limitations alleged by Plaintiff in this case. Tr. 15-16. This was a proper basis for the ALJ to conclude Plaintiff was not entirely credible.

### 2. Inconsistency

The ALJ also described an inconsistency with Plaintiff's testimony. Tr. 16. In assessing the weight accorded to a claimant's statements, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When a claimant fails to be a reliable historian, "this lack of

///

candor carries over" to other portions of his testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ noted Plaintiff's statements about frequent diarrhea were not consistent with the record or even his own reports to medical providers during the relevant time period. Tr. 16.

Plaintiff testified he has abdominal issues and, as a result, he has diarrhea which requires him to use the bathroom 20 times a day about 15 days out of a month. Tr. 62. However, an ER record from March 1, 2013, states that Plaintiff's report of a single episode of diarrhea over a two-hour span of time was a new symptom. *See* Tr. 417 (stating that "[t]he only thing that is new is this single episode of diarrhea"). Another ER record, dated August 31, 2012, indicates Plaintiff experienced nausea and diarrhea from food he ingested at Pig-Out in the Park, but that he did not have a history of these symptoms to suggest a serious condition. Tr. 427-428. Finally, an August 15, 2014, medical report noted Plaintiff's abdominal issue may have been the result of his "good deal of [marijuana]" usage, but there is no mention of Plaintiff experiences bouts of diarrhea. Tr. 15, 691-692.

It was entirely proper for the ALJ to note the foregoing inconsistency in finding Plaintiff's subjective complaints less than fully credible in this case.

**3. Motivation**

The ALJ additionally mentioned Plaintiff's "very weak work history." Tr. 16.

An ALJ may properly consider the issue of motivation in assessing credibility. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). The Ninth Circuit has held that "poor work history" or a showing of "little propensity to work" during one's lifetime may be considered as a factor which negatively affects a claimant's credibility. *Thomas*, 278 F.3d at 959.

///

The ALJ indicated Plaintiff's limited work history suggested Plaintiff was not particularly motivated or interested in working, thus calling into question whether it was his impairments or his lack of desire to work that caused him to seek disability. Tr. 16. Given the record supports the ALJ's finding in this regard (limited work history), it was not improper for the ALJ to note Plaintiff's "very weak work history" when assessing his credibility in this case.

### 4. Drug-Seeking Behavior

The ALJ next found that Plaintiff had displayed a pattern of drug-seeking behavior, which undermined his credibility. Tr. 16.

An ALJ may properly consider evidence of a claimant's substance use in assessing credibility. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ properly considered a claimant's drug-seeking behavior).

As noted by the ALJ, the record reflects Plaintiff made frequent ER visits with vague, unsubstantiated pain complaints. Tr. 16, 417-434. Plaintiff was eventually informed that no further narcotics would be prescribed by his primary care physician. Tr. 16, 692. In addition, medical expert H.C. Alexander testified that Plaintiff's frequent trips to emergency rooms in different places within the community possibly demonstrated drug-seeking behavior. Tr. 13, 45. The ALJ determined this pattern called into question whether Plaintiff was actually experiencing pain or was only interested in obtaining narcotic pain medication. Tr. 16. Again, the ALJ's finding regarding Plaintiff's drug-seeking behavior is supported by the evidence of record; therefore, it was proper for the ALJ to note the drug-seeking behavior in finding Plaintiff's subjective complaints less than fully credible in this case.

### 5. Mental Health Treatment

The ALJ found that Plaintiff's infrequent mental health treatment and rarely mentioned mental health symptoms, which he alleges are disabling, also diminished his credibility. Tr. 16.

In assessing a claimant's credibility, an ALJ properly relies upon "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284); *Fair*, 885 F.2d at 603. "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p. Furthermore, an "unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

As noted by the ALJ, Plaintiff received mental health treatment on a very infrequent basis and rarely mentioned mental health problems to providers. Tr. 16. Plaintiff cites the Ninth Circuit's *Nguyen* decision for the proposition that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)); ECF No. 14 at 14-15. Here, however, Plaintiff testified he received about a month of mental health treatment from Frontier Behavioral Health about six months prior to the July 2015 administrative hearing but discontinued those services because he was no longer experiencing symptoms of depression. Tr. 47. Plaintiff specifically stated that his psychological symptoms have gone away. Tr. 64-65; *see e.g. Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may properly rely on a report that a claimant's mental symptoms improved with the use of medication to find a claimant's testimony unpersuasive); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (noting impairments that are controlled by treatment cannot be considered disabling).

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

The ALJ logically concluded that if Plaintiff's mental health problems were not severe enough to motivate him to continue treatment, it was difficult to accept his assertion that they were disabling. Tr. 16. The ALJ did not err by relying, in part, upon Plaintiff's failure to continue to seek mental health treatment in concluding Plaintiff's subjective complaints were less than fully credible.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's allegations were not entirely credible in this case.

## B. Medical Source Opinions

Plaintiff contends that the ALJ erred by failing to accord weight to the mental health limitations assessed by W. Scott Mabee, Ph.D., and John Arnold, Ph.D. ECF No. 14 at 15-17.

Here, the ALJ found the medical evidence did not support the degree of psychological limitations alleged by Plaintiff. Instead, the ALJ determined Plaintiff retained the RFC to perform simple, routine, repetitive tasks with a reasoning level of two or less; was capable of simple decision-making in a routine, predictable environment; and could have no contact with the public and only superficial contact with supervisors and coworkers. Tr. 14-15. The Court finds that this RFC determination is fully supported by the record. *See infra.*

///

1  On August 3, 2010, Dr. Mabee filled out a Psychological/Psychiatric
2  Evaluation form and checked a box indicating Plaintiff's ability to interact
3  appropriately in public contacts was markedly impaired. Tr. 285-290. However,
4  Dr. Mabee concluded that Plaintiff's symptoms would last a maximum of nine
5  months. Tr. 289; 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (an individual shall
6  be considered disabled if he has an impairment which can be expected to result in
7  death or which has lasted or can be expected to last for a continuous period of not
8  less than 12 months). In any event, Dr. Mabee wrote that Plaintiff was capable of
9  understanding and carrying out simple instructions, could concentrate for short to
10 moderate periods of time, would work better with hands-on tasks, could work
11 without close supervision and not disrupt others, would work best in positions with
12 minimal interaction with others, and could adapt to small changes in a work
13 environment. Tr. 288.

14 On May 4, 2011, Dr. Arnold also completed a Psychological/Psychiatric
15 Evaluation form. Tr. 360-364. This check-box form did not assess any marked or
16 severe mental functional limitations. Tr. 362. It was noted that Plaintiff was
17 enrolled at Spokane Community College and taking weight training and fitness
18 classes. Tr. 363. Dr. Arnold indicated that Plaintiff was capable of understanding
19 and following simple instructions, could recall locations and simple work-related
20 procedures, and would be able to adhere to basic standards of hygiene and
21 cleanliness. Tr. 362.

22 Dr. Mabee filled out another Psychological/Psychiatric Evaluation form on
23 September 8, 2011. Tr. 392-395. On this occasion, the check-box form did not
24 assess any marked or severe mental functional limitations. Tr. 393. Consistent
25 with Dr. Arnold's May 2011 assessment, Dr. Mabee opined that Plaintiff was
26 capable of understanding and following simple instructions, could recall locations
27 and simple work-related procedures, and would be able to adhere to basic
28 standards of hygiene and cleanliness. Tr. 393.

Dr. Arnold competed a second Psychological/Psychiatric Evaluation form on February 24, 2012. Tr. 405-408. Dr. Arnold again wrote that Plaintiff was capable of understanding and following simple instructions, could recall locations and simple work-related procedures, and would be able to adhere to basic standards of hygiene and cleanliness. Tr. 406.

Dr. Mabee completed yet another Psychological/Psychiatric Evaluation form on January 3, 2013. Tr. 397-400. Again, the check-box form did not assess any marked or severe psychiatric limitations. Tr. 399.

The ALJ assigned the foregoing medical reports "partial weight" because they were not supported with much explanation. Tr. 18. However, the ALJ indicated he generally credited the opinions, with the exception of the checked box opinions which were not consistent with the benign findings noted in the record. Tr. 18.

First, it is significant to note that the reports of Drs. Arnold and Mabee predate the relevant time period[1] in this matter. *See Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989) (medical opinions that predate the alleged onset of disability are of limited relevance). Evidence from outside of the relevant time period can be deemed useful as background information; however, it is irrelevant to the extent that it does not address Plaintiff's medical status during the relevant period at issue in this action.

Next, as indicated in Section A, Plaintiff testified at the July 2015 administrative hearing that he no longer experiences symptoms of depression and his psychological symptoms have since dissipated. Tr. 47, 64-65. Plaintiff specifically stated he discontinued mental health treatment after only about a

---

[1]Plaintiff is ineligible for SSI disability benefits for any month including and preceding January 2013, the month he filed his SSI disability application. 20 C.F.R. § 416.330, 416.335; SSR 83-20.

month of services because he no longer experienced any mental health symptoms. Tr. 47. If Plaintiff's mental health issues did not require continued treatment, it would appear the significant psychological limitations assessed on the check-box portions of the reports of Drs. Arnold and Mabee are unsupported.

Finally, the ALJ discounted only the check-box portions of the reports as unsupported and inconsistent with the weight of the record evidence. Tr. 18; *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

The evidence of record, including the narrative portions of the reports of Drs. Arnold and Mabee, does not support a more restrictive RFC than limiting Plaintiff to the performance of simple, routine, repetitive tasks with a reasoning level of two or less; simple decision-making in a routine, predictable environment; and no contact with the public and only superficial contact with supervisors and coworkers. Tr. 14-15. Accordingly, the ALJ did not err with respect to his findings regarding the reports of Drs. Arnold and Mabee.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g). Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, this Court's role is not to second-guess that decision. *Fair*, 885 F.2d at 604. Based on the foregoing, the Court finds the ALJ's interpretation of the medical record is supported by the weight of the evidence of record.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED February 20, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE